UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TD AMERITRADE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE NEVADA AGENCY AND TRUST COMPANY, <br><br> Defendant. | 3:08-CV-00245-LRH-RAM <br><br> ORDER |

Presently before the court is Defendant Nevada Agency and Trust Company's ("NATCO") Motion to Dismiss (#5[1]). Plaintiff TD Ameritrade, Inc. ("Ameritrade") has filed an opposition (#7), to which NATCO replied (#8). Also before the court is Ameritrade's Motion to Strike (#12). NATCO has filed an opposition (#14), to which Ameritrade replied (#15).

**I.     Facts and Procedural History**

This is a civil diversity action between Ameritrade, a corporation organized under the laws of New York with its principal place of business in Nebraska, and NATCO, a Nevada corporation. In December of 2006, through the Depository Trust Corporation ("DTC"), Ameritrade presented to NATCO share certificate numbers 2157 through 2163 ("the certificates"), representing 500,000 shares of Save the World Air, Inc. common stock. DTC asked NATCO to register transfer of the

---

[1] Refers to the court's docket number.

certificates and issue new certificate shares according to DTC's instructions. The owner of the certificates, Guy Muller, endorsed the certificates.

On December 21, 2006, NATCO refused to register transfer of certificate numbers 2161 and 2162, and on December 29, 2006, refused to register transfer of certificate numbers 2157, 2158, 2159, 2160, and 2163. NATCO claims that it is unable to register transfer of the certificates because of prior court orders issued in a related case filed in the District Court for the Southern District of New York. The case arose in 2002 when the Security Exchange Commission ("SEC") filed suit against Save the World Air, its board chairman and chief executive officer, Jeffrey Muller, and Bill Blackwelder. The SEC alleged that Jeffrey Muller led a fraudulent campaign to market a Zero Pollution Fuel-Saving Device and to induce investors to invest in Save the World Air. In the case, Save the World Air also filed a cross-complaint against a number of individuals, including the owner of the stock certificates at issue here, Guy Muller. Guy Muller is Jeffrey Muller's son.

On July 30, 2002, the Honorable George B. Daniels, United States District Judge for the Southern District of New York, issued a preliminary injunction in the SEC litigation. In relevant part, the preliminary injunction prohibited the cross-defendants, including Guy Muller, and the cross-defendants' officers, agents, servants, trustees, employees and attorneys, from the following: "selling, transferring, or encumbering all assets and property in which [the cross-defendants] own or have an interest in . . . including but not limited to any and all shares issued by [Save the World Air] on April 28, 2008 . . . ."

On November 15, 2005, U.S. Magistrate Frank Maas of the Southern District of New York granted the SEC's motion for summary judgment and directed Jeffrey Muller to disgorge $7.5 million in profits, as well as any Save the World Air shares he continued to own or hold.

On November 30, 2005, to discuss issues remaining after the November 15, 2005, order, Magistrate Maas held a telephone conference with counsel and Jeffrey Muller and his wife. One

issue of concern was Save the World Air's cross-claims against Jeffrey Muller's children, including Guy Muller, which the court did not consider in its November 15, 2005, order. The cross-claims arose from Jeffrey Muller's allegedly fraudulent issuance of 500,000 share blocks of Mandalay Capital Corporation stock, Save the World Air's former corporate name, to twelve offshore corporations that the Muller children allegedly control.

On October 27, 2006, Magistrate Maas issued an order regarding Save the World Air's cross-claims. In relevant part, the order denied relief to Save the World Air with respect to Guy Muller because it did not appear that Guy Muller had been served with process. However, following the October order, Save the World Air filed the affidavit of service, which the court found to render service effective pursuant to Federal Rule of Civil Procedure 4(l). Thus, on February 8, 2007, the court amended the October order to apply equally to Guy Muller.

In addition, in the February 8, 2007, order Magistrate Maas clarified his order of November 15, 2005, and further modified the October 27, 2006, order. First, the February order clarified that Jeffrey Muller must disgorge "any [Save the World Air] shares that [he] or any of his nominees directly or indirectly own or control at the present time . . . [and Save the World Air must] cancel any stock options that [Jeffrey] Muller directly or indirectly owns or controls." The court noted that it phrased the modifications this way so that any third parties who purchased shares of Save the World Air stock from Jeffrey Muller or his nominees would not be subject to disgorgement or cancellation of their shares.

Also, with regard to Jeffrey Muller's children, including Guy Muller, the court stated that, "[t]o the extent that these defendants continue to own or hold any such shares, [Save the World Air] presumably will be able to recapture them pursuant to my Decision which extends its reach to any [Save the World Air] shares that [Jeffrey] Muller or any of his nominees directly or indirectly own or control at the present time."

///

## II. Legal Standard

NATCO seeks to dismiss Ameritrade's claim pursuant to federal rule of civil procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, a court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in a plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). However, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels, conclusions, and a formulaic recitation of the elements of the cause of action. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

## III. Discussion

In its complaint, Ameritrade alleges that it was a good-faith and protected purchaser for value of the certificates without knowledge of any claimed defects in their validity. It maintains that pursuant to Nevada Revised Statutes section 104.8202(2)(a), as a good-faith and protected purchaser, the stocks purchased are valid as to Ameritrade even if they were issued or sold with a defect. In addition, Ameritrade alleges that pursuant to Nevada Revised Statutes section 104.8401(1), NATCO was required to register transfer of the certificates. Finally, Ameritrade

4

1  alleges that NATCO, acting as transfer agent for the issuer of the stock (Save the World Air), has
2  the same obligation to Ameritrade as the holder or owner of the security as the issuer of the security
3  would.
4        In its motion to dismiss, NATCO argues that the New York District Court's order and
5  preliminary injunction prohibit NATCO from registering transfer of the certificates at issue in this
6  case. Further, NATCO argues that Ameritrade is not entitled to the transfer of the certificates
7  because it is not a protected purchaser. The court will consider each of these arguments below.
8        **A. Ameritrade as a "Protected Purchaser"**
9        Ameritrade alleges that it is a protected purchaser who took ownership of the certificates
10  without notice of the preliminary injunction and order. Because of its status as a protected
11  purchaser, Ameritrade argues that pursuant to Nevada Revised Statutes section 104.8401, which
12  sets forth the requirements that give rise to an issuer's duty to register transfer of stock certificates,
13  NATCO was required to register transfer of the certificates and issue new certificates. NATCO
14  argues that Ameritrade has failed to allege facts indicating that it meets the requirements of section
15  104.8401, and as a result has failed to state a claim upon which relief can be granted.
16        Specifically, NATCO argues that Ameritrade does not qualify as a protected purchaser as
17  required by Nevada Revised Statutes section 104.8401(g). Subsection (g) provides that "the
18  transfer [must be] in fact rightful or [] to a protected purchaser." Nev. Rev. Stat. § 104.8401(g).
19  Section 104.8303 defines a protected purchaser as a purchaser of a certificated or uncertificated
20  security who (1) gives value, (2) does not have notice of any adverse claim to the security, and (3)
21  obtains control of the certificated or uncertificated security. Nev. Rev. Stat. § 104.8303.
22        NATCO argues that Ameritrade cannot be a protected purchaser because it had notice of
23  adverse claims to the certificates, namely the preliminary injunction and order. Nevada Revised
24  Statutes section 104.8105 defines notice of adverse claims, stating that a person has notice of an
25  adverse claim if he "(1) knows of the adverse claim; (2) is aware of facts sufficient to indicate there
26
      5

1  is a significant probability that adverse claims exists and deliberately avoids information that would
2  establish the existence of the adverse claim; or (3) has a duty, imposed by statute or regulation, to
3  investigate whether an adverse claim exists, and the investigation so required would establish the
4  existence of the adverse claim." Nev. Rev. Stat. § 104.8105.
5       Here, Ameritrade alleges in the complaint that it purchased the certificates "without
6  knowledge of any claimed defects in their validity." (Compl. (#1) ¶ 12.). On a motion to dismiss,
7  the court considers the allegations of the complaint as true. Thus, with regard to Ameritrade's
8  status as a protected purchaser, the court finds that Ameritrade's allegations are sufficient to state a
9  claim upon which relief can be granted.
10      **B. Application of the New York District Court Preliminary Injunction and Order**
11      NATCO also argues that the preliminary injunction and order prevent it from registering
12 transfer of the certificates. In opposition, Ameritrade urges the court to construe the injunction and
13 order narrowly. It maintains that because the preliminary injunction and order do not expressly
14 enjoin Ameritrade from seeking registration of the transfer of the certificates or expressly prohibit
15 NATCO from registering the transfer, the injunction and order do not apply here.
16      **1.    Consideration of the Preliminary Injunction and Order**
17      As a threshold matter, NATCO argues that the court can consider the preliminary injunction
18 and the order, which it attached to the motion to dismiss, without converting the motion to dismiss
19 into a motion for summary judgment. "When ruling on a Rule 12(b)(6) motion to dismiss, if a
20 district court considers evidence outside the pleadings, it must normally convert the 12(b)(6)
21 motion into a Rule 56 motion for summary judgment, and must give the nonmoving party an
22 opportunity to respond." *United States v. Ritchie*, F.3d 903, 907 (9th Cir. 2003) (citations omitted).
23 However, the court may consider certain materials without converting the motion to dismiss into a
24 motion for summary judgment. *Id.* at 908 (*citing Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir.
25 2000); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)). Such materials include documents
26

attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. *Id.*

NATCO argues that the New York District Court order and preliminary injunction are matters appropriate for judicial notice. Courts may take judicial notice of adjudicative facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is not subject to reasonable dispute, and is thus subject to judicial notice, only where the fact is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). If matters of public record meet the requirements of Rule 201(b), then the court may consider the documents without converting the motion to dismiss into a motion for summary judgment. *Ritchie*, 342 F.3d at 909.

"Court orders and filing are the type of documents that are properly noticed under [Rule 201(b)]." *Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101, 1112 (C.D. Cal. 2003). In particular, courts may take judicial notice of proceedings of other federal courts "if those proceedings have a direct relation to matters at issue. *United States ex rel. Robinson Rancheria Citizens Council v. Borneo*, 971 F.2d 244, 248 (9th Cir. 1992) (citations omitted). However, the court can only take judicial notice for the "limited purpose of recognizing the 'judicial act' that the order represents on the subject matter of litigation." *Neilson*, 290 F. Supp. 2d at 1112 *(quoting United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)). Thus, "when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) *(quoting S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3d. Cir. 1999)).

As the New York District Court's preliminary injunction and order are directly related to the matters at issue in this case, this court will take judicial notice of the preliminary injunction and

order. The court notes that it notices these documents for their existence and not for the truth of any facts recited therein. The court therefore considers these documents and reviews Defendant's motion under the standard applicable to a motion to dismiss rather than under the standard applicable to a motion for summary judgment.

### 2. The Preliminary Injunction

NATCO argues that the preliminary injunction prohibits it from registering transfer of the certificates. The preliminary injunction, issued on July 30, 2002, in relevant part prohibits Guy Muller and his "officers, agents, servants, trustees, employees and attorneys and those in active concert or participation with them," from "selling, transferring or encumbering all assets and property in which . . . [he] owns or has an interest in . . . ." The injunction specifies certain property, including shares issued by Mandalay Capital Corporation (Save the World Air's former corporate name) on April 28, 2008, but does not limited itself only to the listed property.

Federal Rule of Civil Procedure 65(d) provides that, so long as they receive actual notice, an order granting an injunction binds the following individuals: (1) the parties; (2) the parties' officers, agents, servants, employees, and attorneys; and (3) other persons who are in active concert of participation with anyone described in subsection one or two. Fed. R. Civ. P. 65(d). While "[a] corporation may properly refuse to transfer stock on its books where an injunction is in force restraining the corporation from making the transfer," Am. Jur. 2d *Corporations* § 599 (2008) (*citing Bartnett v. Handy*, 142 N.E. 84 (Mass. 1923)), here the preliminary injunction does not explicitly prohibit Save the World Air or its agents, including NATCO, from selling or transferring stock. Instead, the injunction prohibits Guy Muller and his agents from selling or transferring stock. Thus, the issue is whether the injunction nonetheless applies to NATCO.

There are two possible arguments by which the preliminary injunction could apply to NATCO. First, if NATCO, who is Save the World Air's transfer agent, can also be considered Guy Muller's transfer agent, then the preliminary injunction might prohibit NATCO from registering

transfer of the certificates. Second, if the preliminary injunction applies to NATCO as a third party acting in concert with a party to the injunction or their agent, then the injunction might prohibit NATCO from registering transfer of the certificates.

With regard to the first argument, 15 U.S.C. § 78c defines a transfer agent as "any person who engages *on behalf of an issuer of securities* . . . ." 15 U.S.C. § 78c(a)(25) (emphasis added). Thus, a transfer agent is the agent of the issuer of securities. Here, Save the World Air is the issuer of the securities, while Guy Muller is the previous owner of the securities. In registering transfer of the certificates, NATCO acts on behalf of the issuer of the securities, Save the World Air, and not on behalf of Guy Muller. As a result, under this agency theory, the preliminary injunction does not prevent NATCO from transferring the stock.

Second, although NATCO is not a party to the SEC litigation or a party's agent, the preliminary injunction might nonetheless apply to prohibit NATCO from transferring Guy Muller's certificates. Specifically, NATCO argues, "[i]f NATCO complied with the request to transfer the certificates, it would have played an integral role in consummating a prohibited transaction and would have aided and abetted the parties named in the injunction, thereby subjecting itself to contempt sanctions notwithstanding its non-party status." (Def.'s Opp'n Mot. Dismiss (#8) at 4:21-25.)

Thus, NATCO's argument falls under Rule 65(d)(3), which states that an injunction applies to those who are "in active concert of participation" with a party or a party's agent. Fed. R. Civ. P. 65(d). Under Rule 65(d), a court may find nonparties in contempt of an injunction if they have actual notice of the injunction and aid or abet its violation. *McGraw-Edison Co. v. Preformed Line Prod. Co.*, 362 F.2d 339, 345 (9th Cir. 1966) (*citing Ex parte Lennon*, 166 U.S. 548, 544 (1897); Fed. R. Civ. P. 65(d)).

The Supreme Court has concluded that Rule 65(d) is "derived from the common-law doctrine that a decree of injunction not only binds the parties defendant, but also those identified

with them in interest, in 'privity' with them, represented by them or subject to their control." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945). Thus, "defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Id.* However, a court's power to issue an injunction is not so broad as to "make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." *Id.* at 13.

The above-cited statements indicate that the aim of Rule 65(d) is to extend the reach of injunctions to nonparties who nonetheless share common interests with a party, are in privity with a party, are represented by a party, or are subject to a party's control. Here, there is no indication that there is any such relationship between Guy Muller, the party bound by the preliminary injunction, and NATCO.

Thus, it is not clear that if NATCO had transferred the certificates it would have acted in concert with Guy Muller or any other party to the preliminary injunction as to aid and abet a violation of the preliminary injunction. Instead, several factual issues remain potentially affecting the applicability of the preliminary injunction. For example, the timing and purpose of Guy Muller's sale of the stocks to Ameritrade, the nature of the relationship between Guy Muller and Ameritrade, and Ameritrade's status as a protected purchaser are all unclear. These are questions of fact relevant to the application of the preliminary injunction inappropriate for resolution on a motion to dismiss, where the court only considers questions of law. Because relevant factual issues remain, the court cannot conclude as a matter of law that the preliminary injunction prohibits NATCO from registering transfer of the certificates.

      **3.**    **The February 8, 2007, Order**

NATCO also argues the New York District Court's order prevents it from transferring the certificates as requested. In an amended order issued February 8, 2007, Magistrate Maas made two modifications to his previous order with potential relevance to this case. First, in an order issued

1  November 15, 2005, Magistrate Maas granted a motion for summary judgment for the SEC and
2  directed Jeffrey Muller to disgorge profits in the amount of $7.5 million, as well as any Save the
3  World Air shares that he continued to own or hold.  In the February 8, 2007, order Magistrate Maas
4  further clarified that Jeffrey Muller was to disgorge any Save the World Air shares that he or any of
5  his nominees[2] directly or indirectly own or control "at the present time."  In so modifying the prior
6  order, Magistrate Maas noted, "I have phrased the modifications in this way to make clear that any
7  third parties who purchased shares of [Save the World Air] stock from [Jeffrey] Muller or his
8  nominees will not be subject to disgorgement or the cancellation of their shares."

9  Second, the February 8, 2007, order states the following:

> [Save the World Air's] cross-claims against . . . Guy [Muller] apparently arise from the issuance of 500,000-share blocks of Mandalay Capital Corporation stock ([Save the World Air's] former corporate name) to twelve offshore corporations that [Guy Muller and the other Muller children] allegedly control.  To the extent that these defendants continue to own or hold any such shares, [Save the World Air] presumably will be able to recapture them pursuant to the modification of my [November 15, 2005, order] which extends its reach to any [Save the World Air] shares that [Jeffrey] Muller or any of his nominees directly or indirectly own or control at the present time.

15  Upon review of the February 8, 2008, order, it is not clear to this court that the order
16  applies to prohibit NATCO from registering transfer of the certificates.  Instead, several factual
17  issues remain.  For example, is not clear when Ameritrade purchased the certificates from Guy
18  Muller.  As Magistrate Maas notes in the order, any third parties who purchased shares of Save the
19  World Air stock from Jeffrey Muller or his nominees are not subject to disgorgement or
20  cancellation of their shares.  Also, it is not clear whether Guy Muller held the shares as Jeffrey
21  Muller's nominee.  To make these determination, the court would have to consider additional
22  evidence.

23  On a motion to dismiss, the court only considers questions of law.  Consideration of factual

---

[2] In relevant part, Black's Law Dictionary defines a "nominee" as a "party who holds bare legal title for the benefit of others . . . ."  *Black's Law Dictionary* (8th ed. 2004).

11

evidence and issues is instead appropriate on motions for summary judgment. Because the court cannot conclude as a matter of law that the preliminary injunction or the February 7, 2007, order prohibited NATCO from registering transfer of Ameritrade's certificates, the court will deny the motion to dismiss.

### C. Motion to Strike

Ameritrade has filed a motion to strike the "immaterial, impertinent, and irrelevant material attached to Defendant's Reply in Support of Motion to Dismiss." (Pl's Mot. Strike (#12) at 1:21-24.) Specifically, Ameritrade asks the court to strike the following items: (1) the affidavit of Clayton P. Brust, Esq.; (2) the letter attached as exhibit A; and (3) the copy of the preliminary injunction and order included as an enclosure in the letter attached as exhibit A. Because in ruling on the motion to dismiss the court has not considered these materials, the court will deny the motion to strike.

IT IS THEREFORE ORDERED that NATCO's Motion to Dismiss (#5) is hereby DENIED.

IT IS FURTHER ORDERED that Ameritrade's Motion to Strike (#12) is hereby DENIED.

IT IS SO ORDERED.

DATED this 30th day of October, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE